ETTA JOSEPH *vs.* WALTER A. DONOVAN ET ALS.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, Js.

Argued October 14th—decided December 22d, 1931.

*Charles A. Harrison,* with whom, on the brief, was *Milton G. Harrison,* for the appellant (plaintiff).

*Robert J. Woodruff,* with whom, on the brief, was *Louis Shafer,* for the appellees (defendants Peck, Sanderson, Woodruff, Executors, and Blakeslee, Executor).

MALTBIE, C. J. Abraham Gingold began an action in the Superior Court against the defendants Walter A. Donovan and Effie Z. Donovan his wife, and caused an attachment to be placed upon their interest in a certain piece of real estate in West Haven. Later he recovered judgment for $4834.24 damages and his costs and filed a certificate of judgment lien against the property. This action was brought to foreclose that lien against the Donovans, Watson S. Woodruff, George L. Peck, Lucien Sanderson, Elmer E. Keller and the West Haven Bank and Trust Company. At the trial the court granted a nonsuit against the plaintiff and she has appealed.

Evidence was offered by the plaintiff in proof of the following facts: On November 23d, 1921, Abraham Lander owned the property and on that day he made a written lease of it to Donovan for the term of fifteen years from December 1st, 1921. This lease contained a provision by which Donovan might, if the lease continued in effect for five years, purchase the property for a certain price, $5000 to be paid within five years from December 1st, 1921, and the balance within ten years from that date. This lease was recorded in the land records of the town. Donovan took possession of the property, paid rentals under the lease and toward the close of the first five years of occupancy tendered Lander a certified check for $5000 in partial execution of his option to purchase the property. Lander refused to receive the money because of some claimed breach of agreement by Donovan. Donovan continued, however, to occupy the premises

and to pay rental. Later the difficulties between the parties were adjusted and on December 28th, 1927, a new agreement was entered into between Lander and Donovan and his wife. Aside from a provision cancelling the lease this consisted of a contract for the purchase of the premises by Donovan and his wife at a slightly higher price than that fixed in the option in the lease. They were to assume certain mortgages upon the premises, make an immediate payment of $500, the receipt of which was acknowledged, and pay the balance of the purchase price on the transfer of title, which was to be not later than January 16th, 1928. After this agreement was made Donovan continued in possession of the property and rent was paid for it until Lander conveyed it to him, in pursuance of the agreement and a written authorization by Mrs. Donovan to his taking title in his name alone.

On January 10th, 1928, the certificate of attachment of the Donovans' interest in the premises was filed. Lander's deed to Donovan is dated January 14th, 1928, but there is no reasonable escape from the conclusion upon the evidence that it was not delivered until January 16th, 1928. On that day and as part of the same transaction Donovan gave to Woodruff, Sanderson and Peck a mortgage of the premises and also a warranty deed of them which recited that it was not to affect the mortgage or their rights under it; he also gave a deed of a right of way over the premises to the West Haven Bank and Trust Company; and an agreement was entered into by him on the one hand and Woodruff, Sanderson and Peck on the other which provided for a lease of the theatre upon the premises to Donovan and that the other parties should endeavor to protect the property from a prior mortgage by refinancing, and to this agreement was appended a further one by Donovan that the premises might be

conveyed to the defendant Keller, to be held upon the terms provided in the agreement. On January 28th, 1928, Woodruff, Sanderson and Peck executed a quitclaim deed of the premises to Keller, reserving their rights under the mortgage, and on the same day Keller executed a quitclaim deed of the premises back to them; the first of these deeds was recorded January 30th, 1928, but the second not until May 22d, 1930. The purpose of the transaction with Woodruff, Sanderson and Peck was to enable Donovan to secure the necessary funds to complete the purchase of the property. On December 21st, 1928, Woodruff, Sanderson and Peck secured a judgment in a foreclosure action brought upon the mortgage made to them by Donovan and on November 30th, 1929, a certificate of foreclosure reciting that title in the premises had become absolute in them was recorded in the land records. On July 19th, 1929, Gingold assigned his right of action against the Donovans to the plaintiff in this action. On October 30th, 1929, judgment against them was recovered in Gingold's name and on November 12th, 1929, the certificate of lien involved in this action was filed, also in his name. On the same day Gingold assigned all his right and interest under the lien to the plaintiff and this assignment was recorded in the land records.

Despite the assignment of the cause of action by Gingold to the plaintiff while the action was pending, the former had the right in behalf of the latter to pursue it to judgment and to file the judgment lien. *Smith* v. *Waterbury & Milldale Tramway Co.*, 99 Conn. 446, 451, 121 Atl. 873. When, however, the lien had been filed and the formal assignment to the plaintiff had been made and recorded it was entirely proper for her to bring this foreclosure proceeding. *Newman* v. *Gaul*, 102 Conn. 425, 434, 129 Atl. 221.

The certificate of attachment was prepared upon a printed form adapted for use in either the Superior Court or the Court of Common Pleas. The scrivener failed to strike out the reference to the latter court so that it recited that the action was returnable to "Superior Court of Common Pleas" for the county of New Haven. The amount of damages stated in the certificate to be claimed in the action was clearly beyond the jurisdiction of the Court of Common Pleas. Any person having occasion to examine the certificate could readily have ascertained in which of the two courts the action was pending, either from the recitals of the certificate itself or by enquiry, and the defect is too inconsequential to make the attachment invalid. The certificate of lien contains a sufficient reference to the attachment so that it can relate back to the date the property was attached. General Statutes, § 5120.

By the terms of the second agrement between Lander and Mr. and Mrs. Donovan the original lease with its option of purchase was expressly and definitely terminated. At the time the attachment was made the agreement between Lander and the Donovans for the purchase of the property was in force; it contained a recital that $500 had been paid upon the purchase price; and as to a one-half interest at least, Donovan occupied the position of a vendee in possession under a contract of purchase in pursuance of which a part of the purchase price had been paid. As such he had an interest in the property subject to attachment and to a judgment lien. *Miller Co.* v. *Grussi*, 90 Conn. 555, 557, 98 Atl. 90. As between him and the plaintiff in this action the fact that this agreement was not recorded was not of consequence. *Lathrop* v. *Brown*, 23 Iowa, 40, 49. Had the contract of purchase remained in force until the lien of the plaintiff

was foreclosed the effect would have been to transfer to her Donovan's rights under it. *Ives* v. *Beecher,* 75 Conn. 564, 566, 54 Atl. 207. But an attachment upon the interest of a vendee of land does not of course prevent him from proceeding to carry out the purchase, and upon his doing so the lien created by it, if it is to have any value, must, as in the case of a mechanic's lien filed against a vendee, attach to the interest in the property thereby obtained. *Hillhouse* v. *Pratt,* 74 Conn. 113, 117, 49 Atl. 905.

It necessarily follows that the plaintiff had a valid judgment lien which attached to the interest of Donovan in the premises at the time the attachment was made and which would have been enforceable to the extent of the interest he had in them after he had acquired title by deed from Lander. The grounds for a nonsuit presented to the trial court, upon the basis of which it made its ruling, were not well taken. The effect of the conveyances by Donovan to Woodruff, Sanderson and Peck and to the Trust Company and of the subsequent foreclosure of the mortgage was not put in issue before the trial court and was not argued before us. It may be that, by reason of the fact of the mortgage having been given as a part of the same transaction in which the title was conveyed to Donovan, the lien thereafter attached only to such interest as he had in subordination to the mortgage, with the result that the plaintiff had thereafter a right to redeem the premises from it rather than a right of foreclosure against Woodruff, Sanderson and Peck. See 1 Jones, Mortgages (8th Ed.) § 584. So it may be that, to permit a foreclosure against the Trust Company under its deed of the right of way might be in effect to convert a way appurtenant into a way in gross. In the absence of rulings by the trial court upon these questions and of arguments before us, we do not pass

upon them. The trial court was in error in granting the nonsuit upon the ground it did, and this requires that the case be remanded; unless, indeed, the parties agree to argue these questions before us upon the present record; in which event a proper motion for a reargument may be made.

There is error, the judgment is set aside and the case remanded to be proceeded with according to law.

In this opinion the other judges concurred.